1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BETTY GARIBAY,                              No. 2:15-cv-0452 DB

12                   Plaintiff,

13           v.                                   ORDER

14    CAROLYN W. COLVIN, Acting
      Commissioner of Social Security,
15

16                   Defendant.

17

18          This social security action was submitted to the court without oral argument for ruling on

19    plaintiff's motion for summary judgment.[1]  For the reasons explained below, plaintiff's motion is

20    granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security

21    ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with

22    this order.

23                                PROCEDURAL BACKGROUND

24          In December of 2011, plaintiff filed an application for Supplemental Security Income

25    ("SSI") under Title XVI of the Social Security Act ("the Act") alleging disability beginning on

26    July 24, 2011.  (Transcript ("Tr.") at 10, 132-37.)  Plaintiff's applications were denied initially,

27    _____

28    [1]  Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant
      to 28 U.S.C. § 636(c).  (See Dkt. Nos. 7 & 12.)

1   (id. at 79-82), and upon reconsideration.  (Id. at 86-90.)

2          Thereafter, plaintiff requested a hearing which was held before an Administrative Law

3   Judge ("ALJ") on July 10, 2013.  (Id. at 23-46.)  Plaintiff was represented by an attorney and

4   testified at the administrative hearing.  (Id. at 23-24.)  In a decision issued on August 6, 2013, the

5   ALJ found that plaintiff was not disabled.  (Id. at 18.)  The ALJ entered the following findings:

6          1.   The claimant has not engaged in substantial gainful activity
              since December 28, 2011, the application date (20 CFR 416.971 *et
7              seq*.).

8          2.   The claimant has the following severe impairments:
              degenerative disc disease with chronic pain and depression (20 CFR
9              416.920(c)).

10         3.   The claimant does not have an impairment or combination of
              impairments that meets or medically equals the severity of one of
11             the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
              (20 CFR 416.920(d), 416.925 and 416.926).
12
13         4.   After careful consideration of the entire record, the undersigned
              finds that the claimant has the residual functional capacity to
14             perform light work as defined in 20 CFR 416.967(b) except the
              claimant is limited to work involving simple routine, repetitive
15             tasks with occasional public contact[.]  Further, she has the ability
              to lift or carry up to 20 pounds occasionally and up to 10 pounds
16             frequently; sit, stand, or walk for approximately 6 hours each per 8
              hour work day.  The claimant can occasionally crawl and climb
17             ramps or stairs but never climb ladders, ropes or scaffolds.

18         5.   The claimant is capable of performing past relevant work as mat
              cutter (739.684-726 light svp 2).  This work does not require the
19             performance of work-related activities precluded by the claimant's
              residual functional capacity (20 CFR 416.965).
20
21         6.   The claimant has not been under a disability, as defined in the
              Social Security Act, since December 28, 2011, the date the
              application was filed (20 CFR 416.920(f)).

22   (Id. at 12-18.)

23          On January 6, 2015, the Appeals Council denied plaintiff's request for review of the

24   ALJ's August 6, 2013 decision.  (Id. at 1-3.)  Plaintiff sought judicial review pursuant to 42

25   U.S.C. § 405(g) by filing the complaint in this action on February 27, 2015.  (Dkt. No. 1.)

26                                         LEGAL STANDARD

27          "The district court reviews the Commissioner's final decision for substantial evidence,

28   and the Commissioner's decision will be disturbed only if it is not supported by substantial

1  evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).

2  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

3  support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v.

4  Chater, 108 F.3d 978, 980 (9th Cir. 1997).

5  "[A] reviewing court must consider the entire record as a whole and may not affirm

6  simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin.,

7  466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

8  1989)).  If, however, "the record considered as a whole can reasonably support either affirming or

9  reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari, 298 F.3d

10  1072, 1075 (9th Cir. 2002).

11  A five-step evaluation process is used to determine whether a claimant is disabled. 20

12  C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step

13  process has been summarized as follows:

14 / 15
Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

16 / 17
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

18 / 19 / 20
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

21
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.

22 / 23
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

24  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25  The claimant bears the burden of proof in the first four steps of the sequential evaluation

26  process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden

27  if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094,

28  1098 (9th Cir. 1999).

APPLICATION

In her pending motion plaintiff asserts the following three principal claims: (1) the ALJ's treatment of plaintiff's subjective testimony constituted error; (2) the ALJ's treatment of the medical opinion evidence constituted error; and (3) the ALJ erred in finding that plaintiff can perform her past relevant work.  (Pl.'s MSJ (Dkt. No. 16) at 5-17.[2])

## I.   **Subjective Testimony**

Plaintiff argues that the ALJ's treatment of plaintiff's testimony constituted error.  (Id. at 5-9.)  The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).  "The clear and convincing standard is the most demanding required in Social Security cases."  Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Valentine v. Commissioner Social Sec. Admin., 574

---

[2]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1  F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,

2  599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other

3  things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

4  testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

5  record, and testimony from physicians and third parties concerning the nature, severity, and effect

6  of the symptoms of which [claimant] complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59

7  (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792

8  (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the

9  record, the court "may not engage in second-guessing."  Id.

10  **A.  Credibility of Plaintiff**

11  Here, the ALJ found that plaintiff's medically determinable impairments could reasonably

12  be expected to cause her alleged symptoms, but that plaintiff's statements concerning the

13  intensity, persistence and limiting effects of those symptoms were not "entirely credible for the

14  reasons explained in this decision."  (Tr. at 14.)  That is the entirety of the ALJ's analysis of

15  plaintiff's credibility.  In this regard, the ALJ's decision fails to specifically cite any clear and

16  convincing reason for discrediting plaintiff's testimony.

17  Defendant's motion, however, argues that the ALJ in fact rejected plaintiff's testimony for

18  four specific reasons.  (Def.'s MSJ (Dkt. No. 21) at 14-15.)  Although it does not appear to the

19  court that the ALJ's decision explicitly referred to any of those four reasons, even assuming

20  arguendo that the ALJ had in fact stated those reasons offered by defendant for rejecting

21  plaintiff's testimony, those reasons are not clear and convincing.[3]

22  In this regard, defendant argues that the ALJ rejected plaintiff's testimony, because

23  plaintiff "said she stopped working on June 30, 2011, not due to any disabling pain or symptoms,

---

24  [3]  It is well established, however, that the court is required "to review the ALJ's decision based on
25  the reasoning and factual findings offered by the ALJ-not post hoc rationalizations that attempt to
   intuit what the adjudicator may have been thinking."  Bray v. Comm'r of Soc. Sec. Admin., 554
26  F.3d 1219, 1225 (9th Cir. 2009).  Rather, the Commissioner's decision "must stand or fall with
   the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  Barbato v.
27  Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1276 n. 2 (C.D. Cal. 1996); see also Gonzalez
   v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis
28  of the ALJ's conclusion . . . .").

but rather due to the fact that she moved back to California." (<u>Id.</u> at 14.)  The ALJ's decision
states:

> The claimant indicated she stopped working on June 30, 2011 due
> to moving back to California, a reason unrelated to the claimant's
> alleged impairments.   However, the claimant also noted the
> impairments became severe enough to make her unable to work on
> July 24, 2011.

(Tr. at 14.)  That plaintiff quit her job, however, and thereafter became disabled is not, by itself, a
convincing reason for rejecting her testimony.

The second reason offered by defendant is that plaintiff denied seeing a mental health
professional for her depression.  (Def.'s MSJ (Dkt. No. 21) at 14.)  The Ninth Circuit, however,
has

> . . . particularly criticized the use of a lack of treatment to reject
> mental complaints both because mental illness is notoriously
> underreported and because 'it is a questionable practice to chastise
> one with a mental impairment for the exercise of poor judgment in
> seeking rehabilitation.'

<u>Regennitter v. Commissioner of Social Sec. Admin.</u>, 166 F.3d 1294, 1299-300 (9th Cir. 1999)
(quoting <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1465 (9th Cir. 1996)).

Defendant contends that the ALJ also rejected plaintiff's testimony because plaintiff's
"symptoms were controlled with medication."  (Def.'s MSJ (Dkt. No. 21) at 14.)  Plaintiff's
testimony, however, reflected that her pain medications made her unstable, dizzy and resulted in
blurred vision.  (Tr. at 30.)  Plaintiff's psychotropic medications simply made her "stabler now."
(<u>Id.</u> at 31.)

The defendant next asserts that the ALJ found that objective medical evidence did not
support plaintiff's allegations.  (Def.'s MSJ (Dkt. No. 21) at 14.)  "[A]fter a claimant produces
objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's
subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged
severity" of the symptoms.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 680 (9th Cir. 2005); <u>see also</u> <u>Putz v.
Astrue</u>, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical
evidence to demonstrate the severity of her fatigue."); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 347 (9th
Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to

1    produce medical evidence supporting the severity of the pain, there would be no reason for an

2    adjudicator to consider anything other than medical findings.").

3        Finally, defendant argues that the ALJ found that plaintiff's daily activities of preparing

4    meals, washing dishes, doing laundry, grocery shopping, paying bills, socializing with her

5    children, etc., were inconsistent with plaintiff's testimony.  (Def.'s MSJ (Dkt. No. 21) at 15.)  The

6    Ninth Circuit, "has repeatedly asserted that the mere fact that a plaintiff has carried on certain

7    daily activities . . . does not in any way detract from her credibility as to her overall disability.'"

8    Orn, 495 F.3d at 639 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also

9    Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("disability claimants should not be

10   penalized for attempting to lead normal lives in the face of their limitations"); Cooper v. Bowen,

11   815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a

12   dark room excluded from all forms of human and social activity.").

13        In general, the Commissioner does not consider "activities like taking care of yourself,

14   household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be

15   substantial gainful activities.  20 C.F.R. § 404.1572(c).  "Rather, a Social Security claimant's

16   activities of daily living may discredit her testimony regarding symptoms only when either (1) the

17   activities 'meet the threshold for transferable work skills' or (2) the activities contradict her

18   testimony."  Schultz v. Colvin, 32 F.Supp.3d 1047, 1059 (N.D. Cal. 2014) (quoting Orn v.

19   Astrue, 495 F.3d 625, 639 (9th Cir. 2007)).

20          The critical differences between activities of daily living and
21          activities in a full-time job are that a person has more flexibility in
             scheduling the former than the latter, can get help from other
22          persons . . . and is not held to a minimum standard of performance,
             as she would be by an employer.  The failure to recognize these
23          differences is a recurrent, and deplorable, feature of opinions by
             administrative law judges in social security disability cases.

24   Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012); see also Garrison v. Colvin, 759 F.3d 995,

25   1016 (9th Cir. 2014) ("The ability to talk on the phone, prepare meals once or twice a day,

26   occasionally clean one's room, and, with significant assistance, care for one's daughter, all while

27   taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day, is

28   consistent with the pain that Garrison described in her testimony.  It is also consistent with an

1    inability to function in a workplace environment."); Orn, 495 F.3d at 639 (reading, watching

2    television and coloring "do not meet the threshold for transferable work skills"); Howard v.

3    Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) ("to find Howard's claim of disability gainsaid by

4    his capacity to engage in periodic restricted travel, as the Council seems to have done, trivializes

5    the importance that we consistently have ascribed to pain testimony").

6         Accordingly, the court finds that plaintiff is entitled to summarize judgment with respect

7    to her claim that the ALJ's treatment of plaintiff's subjective testimony constituted error.

8    **II.    Medical Opinion Evidence**

9         The weight to be given to medical opinions in Social Security disability cases depends in

10   part on whether the opinions are proffered by treating, examining, or nonexamining health

11   professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a

12   general rule, more weight should be given to the opinion of a treating source than to the opinion

13   of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a

14   treating doctor is employed to cure and has a greater opportunity to know and observe the patient

15   as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894

16   F.2d 1059, 1063 (9th Cir. 1990).

17        The uncontradicted opinion of a treating or examining physician may be rejected only for

18   clear and convincing reasons, while the opinion of a treating or examining physician that is

19   controverted by another doctor may be rejected only for specific and legitimate reasons supported

20   by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining

21   physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion

22   of either an examining physician or a treating physician." (Id. at 831.) Finally, although a

23   treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not

24   accept the opinion of any physician, including a treating physician, if that opinion is brief,

25   conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661,

26   671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir.

27   2009)).

28   ////

**A. Dr. Frank Fine**

Here, plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Frank Fine, an examining physician. (Pl.'s MSJ (Dkt. No. 16) at 10.) In this regard, Dr. Fine examined plaintiff on June 17, 2013, and completed a "Physical Residual Functional Capacity Questionnaire." (Tr. at 398-405.) The ALJ's decision discussed Dr. Fine's opinion and afforded that opinion "reduced weight . . . ." (Id. at 17.) In support of that determination the ALJ stated that Dr. Fine's opinion was "based primarily on the claimant's subjective complaints," was "quite conclusory providing little detail for the basis for the extremely restrictive functional limitations," and was "contradicted" by the opinion of another examining physician. (Id.)

However, an ALJ errs where he assigns a medical opinion "little weight while doing nothing more than . . . asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Garrison, 759 F.3d at 1012-13; see also Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

Moreover, the ALJ's characterization of Dr. Fine's opinion as conclusory and based primarily on plaintiff's subjective complaints is not supported by the record. In this regard, Dr. Fine's June 17, 2013 opinion is quite lengthy and detailed. The opinion reflects that it was based not only on plaintiff's subject report but also upon Dr. Fine's review of at least some of plaintiff's medical records, including MRIs and x-rays, as well as Dr. Fine's own thorough examination. (Tr. at 398-401.)

Specifically, Dr. Fine's own examination revealed, in relevant part, that plaintiff suffered from a "swan-neck deformity with an excess of cervical lordosis," her range of motion was "quite limited," she had "muscle rigidity in the lumbar trunk suggesting muscles spasm with loss of lordotic curvature in the lumbar trunk," "arthritic formation and ridging over the proximal region

1  of her right thumb base," "atrophy involving the thenar eminence of the right hand," and "positive

2  impingement sign in the left shoulder . . . ." (Id. at 400.)

3      Accordingly, the court finds that the ALJ failed to offer specific and legitimate reasons

4  supported by substantial evidence for rejecting Dr. Fine's opinion.  Moreover, the court finds that

5  the ALJ's error was not harmless, as Dr. Fine opined that plaintiff's residual functional capacity

6  was significantly more limited than the residual functional capacity determined by the ALJ.

7  Specifically, Dr. Fine opined that plaintiff could lift no more than 10 pounds and could not sit or

8  stand for more than 20 minutes at a time.  (Tr. at 400-01.)

9      Accordingly, plaintiff is also entitled to summary judgment on her claim that the ALJ's

10  treatment of the medical opinion evidence constituted error.

11                              CONCLUSION

12      With error established, the court has the discretion to remand or reverse and award

13  benefits.[4] McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  A case may be remanded

14  under the "credit-as-true" rule for an award of benefits where:

15          (1) the record has been fully developed and further administrative
            proceedings would serve no useful purpose; (2) the ALJ has failed
16          to provide legally sufficient reasons for rejecting evidence, whether
            claimant testimony or medical opinion; and (3) if the improperly
17          discredited evidence were credited as true, the ALJ would be
            required to find the claimant disabled on remand.
18

19  Garrison, 759 F.3d at 1020.  Even where all the conditions for the "credit-as-true" rule are met,

20  the court retains "flexibility to remand for further proceedings when the record as a whole creates

21  serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social

22  Security Act."  Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015)

23  ("Unless the district court concludes that further administrative proceedings would serve no

24  useful purpose, it may not remand with a direction to provide benefits."); Treichler v.

25  Commissioner of Social Sec. Admin.,, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ

26  makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand

27

28  [4] In light of the analysis and conclusions set forth above, the court need not address plaintiff's
    remaining claim of error.

                              10

1   the case to the agency.").

2           Here, because of the ALJ's numerous errors, and the multiple conflicting medical

3   opinions, the record in this action is unclear and ambiguous, and this matter must be remanded for

4   further proceedings.

5           Accordingly, IT IS HEREBY ORDERED that:

6               1.  Plaintiff's motion for summary judgment (Dkt. No. 16) is granted;

7               2.  Defendant's cross-motion for summary judgment (Dkt. No. 21) is denied;

8               3.  The Commissioner's decision is reversed; and

9               4.  This matter is remanded for further proceedings consistent with this order.

10  Dated:  January 30, 2017

11

12

13                                                  DEBORAH BARNES
                                                    UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

27  DLB:6
    DLB1\orders.soc sec\garibay0452.ord
28

11